## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

In re:

**Eastlake Investments, LLC**
      Debtor.

**Case No. 19-42309**
Chapter 7
Hon. Thomas J. Tucker

_____/

### RESPONDENTS' AMENDED OBJECTION TO FIRST INTERIM APPLICATION OF ATTORNEY FOR TRUSTEE FOR SERVICES RENDERED BETWEEN MAY 8, 2019 THROUGH SEPTEMBER 30, 2019

NOW COME Johni Semma, Dean J. Groulx, Wendi A. Grimaldi-Groulx, Law Office of Dean J. Groulx, PC, and Long Lake Realty Group, LLC, ("Respondents") and for their Amended Objection to First Interim Application of Attorney for Trustee for Services rendered Between May 8, 2019 through September 30, 2019, says:

### Introduction

Respondents' initial Objection was filed on October 21, 2019. Respondents' counsel was contacted by Charles Bullock on behalf of the attorney for Trustee. Mr. Bullock pointed out that there were certain misstatements with regard to communications alleged to have taken place between the Debtors' representatives and Mr. Bullock's firm. The purpose of this Amended Objection is to clarify the specific communications made by the Debtors' Representatives to counsel for the Trustee. All communications were telephonic, as is reflected in the attached Brief. The statement in the initial Objection indicated there was a "meeting" between Debtors' representatives and counsel for the Trustee was made in error. That statement is deemed withdrawn.

    A.    Respondents admit the factual allegations contained in this paragraph.

B.    Respondents admit that work has been done, but deny that the work interim allowance of fees is appropriate or necessary at this time for the reasons set forth in the accompanying Brief in Support of this Objection.

C.    Respondents neither admit nor deny, as no response is required.

D.    Respondents respond as follows:

1.    Respondents admit the amount being requested.

2.    Respondents admit the amount being requested.

3.    Respondents neither admit nor deny the allegations in this paragraph.

4.    Respondents object to legal fees beginning on May 8, 2019, given paragraph A indicates that Applicant began acting as legal counsel on May 16, 2019.

5.    Respondents respond to the legal services provided as follows:

A.    341 Meeting:  Respondent objects to the review of documents in preparation for the 341 meeting, as those activities are more properly charged to the Trustee, as described in more detail below.

B.    Employment and Fee Applications: Respondent admits that various 2004 Examination Motions were prepared and filed.

C.    Motions: Respondent admits that Trustee's counsel filed the pleadings indicated in this section.

D.    Sale, Realization and Liquidation of Estate Property:  Respondent objects to any compensation related to the sale of the property, as the sale took place prior to the conversion of the matter and well in advance of Trustee's counsel's employment.  It is unclear why

Trustee's counsel prepared an Order regarding Distribution to Citizen's Bank, N.A., based upon an Objection to same filed by Respondent. Respondent admits that an adversary proceeding and certain concurrences were filed; however, Respondent denies that any such activities benefited the Estate in any manner.

E. <u>Benefits to the Estate</u>: Respondent denies that any benefits to the estate were garnered by Trustee's counsel. The funds referred to by Trustee's counsel were merely transferred from the prior Debtor's counsel to the Trustee. The sale of property took place long before Trustee's counsel's involvement in this matter.

6. Respondents neither admit nor deny, as no response is required.

7. Respondents deny that any further investigation would provide any benefit to the Estate, but rather would only benefit the Trustee and Trustee's counsel by way of legal fees incurred.

8. Respondents neither admit nor deny, as no response is required.

9. Respondents deny there are no other administrative expenses, as the U.S. Trustee has filed a Proof of Claim in the amount of $54,270.00 and the Debtor has incurred legal fees for its prior counsel and will incur legal fees for its existing counsel.

10. Respondents neither admit nor deny, as no response is required.

11. Respondents neither admit nor deny, as no response is required.

12. Respondents neither admit nor deny, as no response is required.

13. Respondents neither admit nor deny, as no response is required.

F.(*sic*)  Respondents neither admit nor deny, as no response is required.

## BRIEF IN SUPPORT OF RESPONSE

Trustee's counsel seeks compensation for services rendered as counsel for the Chapter 7 Trustee in this matter.  In addition to problems with the Application and time entries attached thereto, Respondents object to payment to Trustee's counsel in its entirety for the failure to fully and accurately disclose counsel's role as Receiver in a circuit court matter that become directly entangled with this bankruptcy proceeding.

### *Affidavit of Disinterestedness*

Counsel submitted an Affidavit of Disinterestedness attached to its *Ex-Parte* Application for employment on May 16, 2019 (Docket No. 100), a copy of which is attached as **Exhibit A**.

In counsel's Affidavit, counsel indicated, under oath, that any interest between the firm and this Debtor was remote and outstanding fees were waived (Affidavit, p. 2, ¶ d).  There were no disclosures regarding phone communications made by the Debtor and Debtor's representatives to counsel for the Trustee prior to the filing of the Chapter 11 proceeding. Although there was disclosure that Trustee's counsel had acted as a Receiver on behalf of Citizens Bank, N.A., there was no disclosures that Applicant was paid $7,600 as fees for their efforts as Receiver.  In addition, there was no disclosure of the entry of a Charging Order in the state court proceeding directed to the Debtor to pay over to Citizens Bank, N.A., any funds that were due Jimmy Danou (the Defendant in that action) (**Exhibit B**).

### *Communications of Debtor and Debtor's Representatives to Applicant*

This bankruptcy was filed on February 19, 2019 as a Chapter 11 proceeding.  Attached hereto and incorporated herein by reference as **Exhibit C**, is the Affidavit of Dean J. Groulx.  On February 15, 2019, Dean J. Groulx called and left a detailed voicemail for Charles Bullock

regarding this Debtor and filing bankruptcy (*see* Affidavit, **Exhibit C**, ¶ 10). Elliot Crowder

returned this phone call on February 18, 2019, and discussed the matter with Mr. Groulx (the

following Monday), but ultimately was not retained to represent the Debtor in this matter (*see*,

Affidavit, **Exhibit C**, ¶ 11). In addition, the before this Chapter 11 was filed, Johni Semma

spoke via telephone with Elliot Crowder to discuss filing a Chapter 11 proceeding on behalf of

this Debtor, Eastlake Investments, LLC because of the impending expiration of the redemption

period after a mortgage foreclosure. The representation was not consummated; however, they

provided relevant and important information unknowingly to the Receiver over Jimmy Danou's

entities.

Michigan Rules of Professional Conduct Rule 1.18 provides for duties to prospective

clients. It specifically holds that "Even when no client-lawyer relationship ensues, a lawyer who

has learned information from a prospective client shall not use or reveal that information." Rule

1.18(b). Further, a lawyer is prohibited from representing a client that have interests that are

materially averse to those of the prospective client or that could be harmful to the prospective

client. *See*, Rule 1.18(c). Finally, this prohibition on representation follows to any members of

the same law firm who may have the same knowledge. *See*, Rule 1.18(c). The only means to

avoid the disqualification under this Rule are with the informed consent of both the potential

client and the affected client. *See*, Rule 1.18(d).

Here, Elliot Crowder spoke with Dean Groulx and Johni Semma regarding representation

of the Debtor prior to the bankruptcy filing. The same attorneys then applied for and were

approved to represent the Trustee, Fred J. Dery. The Trustee is charged with gathering the assets

of a Debtor for the benefit of the unsecured creditors, a position generally adverse to the Debtor.

***Mr. Bullock's Role as Receiver for Citizens Bank, N.A. and such Bank's Claims against the Bankruptcy Estate.***

In addition to the obvious and real conflict based upon the prospective client meetings or discussions, Applicant also has a conflict of interest based upon its role as Receiver in a state court action against Jimmy Danou.

Citizens Bank, N.A., holds a Judgment against Jimmy Danou and two of his wholly owned entities in the amount of $182,950.94 that was entered on November 16, 2016 (**Exhibit D**). The Judgment did not provide for payment of Plaintiff's attorney fees. As of the date of this filing, the total amount due on the Judgment, assuming no payments have been made, inclusive of judgment interest is $**200,343.67**.

Charles Bullock was appointed Receiver over MindMingle, LLC (one of Jimmy Danou's Defendant entities) on August 22, 2018 in the state court action, for the sole purpose of collecting on the Judgment entered by the state court (**Exhibit E**). Citizens Bank and Charles Bullock have been attempting to collect on the Judgment since 2018. In discharging his duties, Mr. Bullock had dealings with Johni Semma, who was on site at a location owned by Mr. Danou.

On March 15, 2019, Citizens Bank, N.A., as Plaintiff in the state court action, sought and received a Charging Order against the interests and distributions of Eastlake Investments, LLC, a Michigan limited liability company (**Exhibit B**). This was after the telephone calls that would have disclosed Mr. Danou's then-interest in Debtor.

On March 25, 2019, after having the Charging Order entered against the Debtor, apparently by stipulation alone and without any Application for Fees, a Stipulated Order Approving Receiver's Compensation from September 5, 2018 through February 28, 2019 in the total amount of $30,124.41, was entered in the state court action (**Exhibit D**). The Order specifically provides that the fees will be paid by Plaintiff and added to the indebtedness owed

by Defendants (including Jimmy Danou). This would increase the amount due and owing to slightly more than $230,400. Under the terms of this Order, **Citizens Bank either paid Applicant, or was obligated to pay Applicant over $30,000** after the Chapter 11 bankruptcy was filed, but before the case was converted. While Applicant indicated in its Affidavit that it waived any **outstanding** fees as a result of the Receivership, Applicant failed to include the fact that it was paid $7,600.00 from funds gathered into the Receivership Estate from Jimmy Danou.

On April 3, 2019, while the Receivership was still pending, an Order regarding Distribution of Sale Proceeds was entered in this case at Docket 59 (the "Distribution Order"), which provided for payment to Citizens Bank (based upon its claim against Danou in the underlying state court case) in the **amount of $250,000**, which is considerably higher than the Judgment entered in Citizens Bank, LLC's favor in that action. The Judgment with interest is only slightly more than $200,000. There is no claim against the Debtor, only against Jimmy Danou.

Interestingly, the Distribution Order purports to pay Citizens Bank out of the Estate for a claim against a non-Debtor. The Debtor had absolutely no liability to Citizens Bank. However, the Trustee has never objected to the entry of the Distribution Order. In fact, the Trustee moved to approve the Allowed Claim for Citizens Bank after it was challenged by Mr. Semma (and later withdrawn under Mr. Semma's direction). Further, Citizens Bank, N.A., filed a Proof of Claim (**Exhibit E**), to which the Trustee has never objected, despite Citizens Bank, N.A., having no claim against the Debtor's Estate.

It was not until June 7, 2019, that a Stipulated Order Terminating Receivership, Discharging, and Approving Actions of Receiver was entered (**Exhibit F**). In other words, Charles Bullock was an active Receiver on behalf of Citizens Bank, N.A., at the same time this

bankruptcy was pending and an Order was entered providing payment to Citizens Bank, N.A., for a claim that was not against the Debtor. The Trustee never objected to the Distribution Order or the Proof of Claim filed by Citizens Bank, N.A. After his termination as Receiver, the Trustee moved to authorize a settlement with Citizens Bank, N.A. against the Estate for a claim against a non-Debtor. The termination of the Receiver in the state court action occurred without a final accounting.

The Trustee's counsel stated in its Affidavit of Disinterestedness that "any interest between [Applicant], myself, and this Debtor was remote and indirect (**Exhibit A**, p. 3, ¶ d). Any outstanding fees owed resulting from the receivership have been waived." Trustee's counsel failed to disclose the prior fees it had received as Receiver for Citizens Bank, N.A., in the amount of $7,600.00. Obtaining the initial Distribution Order, although actually effectuated by Citizens Bank's counsel, was certainly a direct and substantial interest between Applicant and this Debtor. Further, Applicant concurred in the resolution of a challenge to that Distribution Order and filed a Motion to Approve the settlement (Docket No. 218), which resulted in Citizens Bank having an Allowed Claim in the amount of $250,000 (Docket No. 268).[1] Further, Applicant's involvement as Receiver directly involved both purported members of the Debtor in a claim against one of the purported members. This is a direct connection.

There is an actual conflict of interest present where counsel for the Trustee over Eastlake Investments, LLC, is also acting as a Receiver on behalf of Citizens Bank, N.A., who filed a Proof of Claim for $250,000.00 and an Order providing for the Debtor's Estate to make payment to Citizens Bank, N.A., in such amount, despite having no claim against the Debtor's Estate whatsoever.

---

[1] Respondents acknowledge that, at the direction of Respondent Johni Semma, Respondents withdrew their Objection to the Distribution Order and agreed to the Allowed Claim.

The Michigan Rules of Professional Conduct Rule 1.7 prohibit the representation of a client if the representation would adversely impact another client. Here, the work done as Receiver has directly impacted the Estate in this matter in the amount of $250,000.00, an amount that the Debtor, itself, should not be responsible to pay.

*In re Woodward East Project, Inc.*, 195 B.R. 372 (E.D. Mich. 1996), although dealing with an attorney for a debtor, the court acknowledges the authority held by a court to deny compensation in its entirety where there is a conflict of interest arising from the circumstances that is clear. *Id.* at 377-378.

Under 11 U.S.C. § 328(c), the Court may deny the allowance of any compensation for services or reimbursement of expenses of a professional person employed under § 327 if, at any time during employment, the person is not disinterested.

The term "disinterested person" is defined in 11 U.S.C. § 101(14):

   (A) Is not a creditor, an equity security holder, or an insider;
   (B) Is not and was not, within 2 years before the date of filing of the petition, a director, officer, or employee of the debtor; and
   (C) Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

This definition has been construed broadly. The statute is "sufficient broad to include any professional with an 'interest or relationship that would even faintly color the independence and impartial attitude required by the Code." *In re Greystone Holdings, L.L.C.*, 305 B.R. 456 (N.D. Ohio, 2003), *citing*, *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998).

***Time Entries in Application***

In addition to the absolute conflict of interest in its representation of the Trustee in this matter, the time entries attached to the Application have, at quick glance, several glaring deficiencies.

First, the Application in its body at paragraph A, purports that Applicant began legal work on May 16, 2019. However, the title to the Application and the proposed Order, as well as the time entries, all begin on May 8, 2019, which was before even the Trustee was appointed to the case (Trustee Dery was not appointed until May 9, 2019).

A quick review of the time entries found at least two places where obvious duplicate entries for the same individual on the same date are billed for a total of nearly three (3) hours of extra time. August 7, 2019 contains two identical entries for Elliot Crowder for a total of 0.3 hours. September 23, 2019, contains duplicate entries for Leslie D. Haas for 2.4 hours. Again, Respondents performed only a cursory review of the time entries.

A similar quick review of the time entries found over twenty-five hours devoted to simply "formulating strategy" with absolutely no indication as to what that may mean. It would appear that would include conferences with other counsel, parties, or non-parties, information that should be disclosed. The entries should not include research or conferences, as those items are so delineated in the time records.

Finally, the only benefit listed to the Estate is gathering of over $1.6 million. However, those funds were property of the Estate long before counsel was appointed. In fact, counsel has expended in legal fees far more than it has brought into the Estate.

There are multiple entries for telephone calls and emails that appear to be more appropriate for the Trustee to have completed or are ministerial in nature.

As explained in *In re Taylor*, 66 B.R. 390 (W.D. Pa. 1986), an attorney acting as an attorney for a Trustee in a bankruptcy proceeding may only be compensated for those services that are required in a legal capacity, and not for performing the duties of a Trustee. *Id.* at 392-393. The court in *In re Taylor* goes on to explain that telephone calls and correspondence with parties would appear to be more appropriate duties for a Trustee without some explanation as to the legal nature of those duties.

WHEREFORE, Respondents respectfully request this honorable Court deny the First Interim Application of Attorney for Trustee for Services rendered Between May 8, 2019 through September 30, 2019.

Respectfully Submitted,

By: /s/Jerome D. Frank
Jerome D. Frank (P13634)
Matthew W. Frank (P66028)
Frank & Frank, PLLC
30833 Northwestern Highway, Suite 205
Farmington Hills, MI 48334
(248) 932-1440
jfrank@frankfirm.com
mfrank@frankfirm.com

October 24, 2019

# Exhibit A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**IN THE MATTER OF:**

Eastlake Investments, LLC,

Bankruptcy Case No. 19-42309

Honorable Thomas J. Tucker

Debtor.

Chapter 7

_____/

## AFFIDAVIT OF DISINTERESTEDNESS

STATE OF MICHIGAN     )
                               )SS.
COUNTY OF OAKLAND    )

Charles D. Bullock, being first duly sworn, deposes and says that he is an attorney at law with the firm of Stevenson & Bullock, P.L.C. ("S&B"), that he is authorized to make this Affidavit, that he is a disinterested person as defined by 11 U.S.C § 101(14), that neither he nor any member of S&B holds or represents an interest adverse to the estate, and that the employment of S&B is in compliance with 11 U.S.C. § 327(a).

The Chapter 7 Trustee, Fred J. Dery, has asked that S&B perform the professional services as set forth in the Trustee's Application for Employment on behalf of the bankruptcy estate. Neither I nor the firm with which I am associated:

       a)     Are a creditor, an equity security holder, or an insider of the Debtor;

b)     Are or have been, within the two (2) years before the date of the filing of the petition in this case, a director, officer, or employee of the Debtor; and

c)     Have any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

I further disclose the following:

a)     Michael A. Stevenson, a partner at S&B, is a Chapter 7 Panel Trustee.

b)     I taught a bankruptcy class at Thomas M. Cooley Law School with Leslie K. Berg of the Office of the United States Trustee.

c)     S&B has represented employees of the Office of the United States Trustee in matters unrelated to this bankruptcy case and the Debtor.

d)     On or about August 22, 2018, the Oakland County Circuit Court for the State of Michigan entered a Stipulated Order Appointing Receiver and Related Injunctive Relief (the "Receivership Order"), in the case of Citizens Bank, N.A. v. Mindmingle, LLC, Midtown Investment Group, Inc., and Jimmy Danou (Case No. 16-156009-CB), which appointed me as Receiver over the receivership property of Midtown Investment Group, Inc.  It has been asserted

that Midtown Investment Group, Inc. is solely owned by Jimmy Danou, the Debtor's member. I was not appointed receiver over the Debtor or any of its assets. Moreover, the Debtor was not a party in the state court proceeding in which the Receivership Order was entered. I was not appointed receiver over Jimmy Danou. On March 26, 2019, Midtown Investment Group, Inc. filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which was signed by Jimmy Danou. Any interest between S&B, myself, and this Debtor was remote and indirect. Any outstanding fees owed resulting from the receivership have been waived.

e) No agreement or understanding exists between affiant or any other person for any division or sharing of compensation which is prohibited by statute. I have been advised that the Debtor has many creditors and, accordingly, S&B may have rendered services or had business associations with its creditors or other respective attorneys and accountants in the ordinary course of their professional practice, but none of the services have been in connection with this proceeding.

**STEVENSON & BULLOCK, P.L.C.**

By:   /s/ Charles D. Bullock (P55550)
      Attorney for Trustee
      26100 American Drive, Suite 500
      Southfield, MI  48034
      (248)354-7906
      cbullock@sbplclaw.com


Subscribed and sworn to before me this 9th day of May, 2019.

/s/ Marsha Stella-Lawrence
Marsha Stella-Lawrence, Notary Public
Oakland County, Michigan,
Acting in Oakland County, Michigan
My Commission Expires: August 28, 2024

# Exhibit B

FILED    Received for Filing    Oakland County Clerk    3/15/2019 3:58 PM

# STATE OF MICHIGAN

# IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

CITIZENS BANK, N.A.

     Plaintiff,

v.                                                                      Case No. 16-156009-CB
                                                                        Hon: Martha D. Anderson
MINDMINGLE, LLC, a Michigan limited
Liability company: MIDTOWN INVESTMENT
GROUP, INC., a Michigan corporation; and
JIMMY DANOU, an individual,
jointly and severally,

     Defendants.

_____

ZOUSMER LAW GROUP PLC
By:    Michael I. Zousmer (P47190)
Attorneys for Plaintiff
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan  48302
(248) 351-0099
_____/

## CHARGING ORDER AGAINST THE INTERESTS AND DISTRIBUTIONS OF EASTLAKE  INVESTMENTS LLC, A MICHIGAN LIMITED LIABILITY COMPANY

At a session of said Court
held in the City of Pontiac,
County of Oakland, State of Michigan
on __3/15/2019_____
PRESENT:  MARTHA D ANDERSON
Circuit Court Judge

Pursuant to representations made by Plaintiff in its Petition and relying on the cited

statutory authority, it is ordered that, pursuant to Plaintiff's request, a Charging Order is hereby

entered against all interests held by and distributions made to Defendant Jimmy Danou, in this

case individually and as a member of EASTLAKE INVESTMENTS LLC, a Michigan limited liability company, for the amount due to Plaintiff on the Consent Judgment entered against Defendant in this case and that the interests are charged pursuant to MCL 450.4507 until further order of this Court or until a notice of satisfaction of judgment is filed by Plaintiff.

Dated: _3/15/2019_____      /s/ Martha Anderson

                                                  Circuit Court Judge

                                                             KH

SUBMITTED AND APPROVED
AS TO FORM

ZOUSMER LAW GROUP PLC


/s/  Michael I. Zousmer_____
By:     Michael I. Zousmer (P47190)
Attorneys for Plaintiff
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan 48302
(248) 351-0099

# Exhibit C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

In re:                                          Case No. 19-42309
**Eastlake Investments, LLC**                   Chapter 7
    Debtor                    Hon. Thomas J. Tucker
_____/

### <u>AFFIDAVIT OF DEAN J. GROULX, ESQ.</u>

I, Dean Groulx, depose and state:

1.    I am an attorney, in good standing, licensed to practice law in the State of Michigan.

2.    Debtor, Eastlake Investments, LLC, owned North Pointe Plaza, a shopping center located in New Baltimore, Michigan ("Shopping Center").

3.    On or about October 3, 2017, Debtor obtained a mortgage loan and a line of credit from First State Bank, secured by mortgages on the Shopping Center. First State Bank also acquired a loan to Debtor from Gravity Funding, LLC, a Utah limited liability company, evidenced by a note and secured by a mortgage against the Shopping Center. Upon information and belief, Gravity Funding assigned its note and mortgage on the Shopping Center to FSB.

4.    First State Bank declared a default on the loans to Debtor.

5.    On or about July 18, 2018, First State Bank commenced foreclosure by publication, pursuant to a power of sale clause contained in the mortgage, securing the line of credit it extended to Debtor, with regards to that mortgage.

6.    On or about August 17, 2018, the foregoing mortgage was foreclosed by a sale of the mortgaged premises, at public sale, conducted by the Macomb County Sheriff's Department.

7.    The redemption period was six (6) months from the date of sale, or February 15, 2019.

8.    Debtor had entered into a Purchase Agreement to sell the Shopping Center to O.P. Investment Group, LLC but was unable to close on the transaction before the period of redemption was set to expire on February 15, 2019.

9.    At Debtor's request, I contacted several bankruptcy firms on February 15, 2019, about representing the Debtor in securing an extension of the redemption period from First State Bank to provide Debtor with additional time to close on the sale of the Shopping Center to O.P. Investment Group, LLC or, if an extension were not obtained, to file a petition for protection under chapter 11 of the U.S. Bankruptcy Code to prevent the period of redemption from expiring before the sale could be completed.

10. On February 15, 2019, I placed a telephone call to Charles Bullock, of Bullock & Stephenson, PLC, at his office. I left a detailed message on Mr. Bullock's personal voicemail, explaining, in detail, the reasons for my call and requesting that he return my call as soon as possible because of the urgent nature of the situation involving the Debtor.

11. On February 18, 2019, I received a telephone call from Elliot Crowder, of Bullock & Stephenson, PLC. Mr. Crowder indicated that he was returning my call to Mr. Bullock, at Mr. Bullock's request. I explained to Mr. Crowder the nature of the situation involving the Debtor but Debtor had retained other counsel, who was able to secure a brief extension of the period of redemption from First State Bank. I also explained, however, that it was unlikely that Debtor would be able to close on the sale of the Shopping Center to O.P. Investment Group, LLC before the extension expired; thus, there was a strong possibility that Debtor would need to file a chapter 11 petition. Mr. Crowder thanked me for considering their firm and indicated that if the Debtor needed assistance in pursuing bankruptcy, they would welcome the opportunity to represent the Debtor.

12. I declare, under penalty of perjury, that the statements above are true, to the best of my information, knowledge, and belief.

Dean J. Groulx

STATE OF MICHIGAN )
) SS:
COUNTY OF OAKLAND )

The foregoing instrument was subscribed and sworn before me on October 23, 2019, by Dean J. Groulx, who personally appeared before me and signed the affidavit.

Signature: _Janet Ann Bills_
Printed Name: _Janet Ann Bills_
Notary Public, State of Michigan, County of _Oakland_
Acting in _Oakland_ County, State of Michigan
My commission expires on: _8-25-25_

JANET ANN BILLS
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Aug 25, 2025
ACTING IN COUNTY OF _Oakland_

# Exhibit D

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

CITIZENS BANK, N.A,

     Plaintiff,

v.

MINDMINGLE, LLC, a Michigan limited
liability company; MIDTOWN INVESTMENT
GROUP, INC., a Michigan corporation; and
JIMMY DANOU, an individual,
jointly and severally,

     Defendants.

Case No. 16-156009-CB
Hon: Wendy Potts

---

ZOUSMER LAW GROUP PLC
By:   Michael I. Zousmer, (P47190)
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan 48302

---

## CONSENT JUDGMENT

At a session of said Court, held in the
City of Pontiac, County of Oakland and
State of Michigan, on   NOV 16 2016

PRESENT:    WENDY POTTS
Circuit Court Judge

This matter having come before the Court upon the consent of the parties; and the Court

being otherwise fully and duly advised in the premises;

NOW THEREFORE, it is hereby ordered that:

1.    Judgment is entered in favor of Citizens Bank, N.A., a division of RBS Citizens,

NA and against Mindmingle, LLC, Midtown Investment Group, Inc., and Jimmy Danou, jointly

and severally, in the amount of One Hundred Eighty Two Thousand Nine Hundred Fifty and

94/100 ($182,950.94), with post-judgment interest to accrue on such amount from and after the

date of entry of this Consent Judgment at the contract interest rate.

2.    It is expressly acknowledged and agreed that, with the exception of the Promissory Notes specifically referenced in the Forbearance Agreement executed contemporaneously herewith, this Consent Judgment in no way whatsoever amends or modifies any obligation any Defendant owes to Plaintiff under any other promissory note, guaranty, security agreement or any other document or agreement.

3.    Defendants waive the twenty-one (21) day stay imposed under MCR 2.614(A)(1) and, therefore, Plaintiff may execute on this Consent Judgment immediately after an event of default.

4.    Entry of this Consent Judgment resolves all remaining claims and closes this case.

/s/ Judge Wendy Potts
_____
CIRCUIT COURT JUDGE
                                                           JH

APPROVED AS TO FORM AND SUBSTANCE
FOR IMMEDIATE ENTRY:

ZOUSMER LAW GROUP PLC

_____
Attorneys for Plaintiff
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan 48302
(248) 351-0099


MINDMINGLE, LLC                        MIDTOWN INVESTMENT GROUP, INC

By: _____           By: _____
Its: _____          Its: _____

_____
Jimmy Danou, Individually

2

# Exhibit E

FILED   Received for Filing   Oakland County Clerk   8/27/2018 12:28 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

CITIZENS BANK, N.A,

     Plaintiff,

v.

          Case No. 16-156009-CB
          Hon: Wendy Potts

MINDMINGLE, LLC, a Michigan limited
liability company; MIDTOWN INVESTMENT
GROUP, INC., a Michigan corporation; and
JIMMY DANOU, an individual,
jointly and severally,

     Defendants.

_____

| | |
|---|---|
| ZOUSMER LAW GROUP PLC | KASED LAW, PLLC |
| By:   Michael I. Zousmer (P47190) | By:  Ziyad Kased (P72237) |
| Attorneys for Plaintiff | Attorney for Defendants |
| 4190 Telegraph Rd., Ste. 3000 | 631 E. Big Beaver Rd., Ste. 101 |
| Bloomfield Hills, Michigan  48302 | Troy, Michigan  48083 |
| (248) 351-0099 | (248) 680-7300 |

_____

**STIPULATED**
**ORDER APPOINTING RECEIVER AND RELATED INJUNCTIVE RELIEF**

At a session of said Court,
held in the City of Pontiac,
County of Oakland and State of Michigan,
on         8/22/2018

PRESENT:  Circuit Court Judge

This matter having come to the Court upon the parties' stipulation; Plaintiff having filed a

Motion for Appointment of Receiver;   the Court finding good cause for entry of this Order

Appointing Receiver and Related Injunctive Relief; and the Court being otherwise duly advised

in the premises;

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.    Appointment of Receiver.  Pursuant to MCR 2.622, Charles D. Bullock
("Receiver") of Stevenson & Bullock PLC is appointed as receiver over:

FILED    Received for Filing    Oakland County Clerk    8/27/2018 12:28 PM

a. all items of machinery or equipment owned by Midtown Investment Group, Inc. ("Midtown"), including, without limitation, all computer equipment, office equipment and supplies (collectively, the "Equipment");

b. all accounts receivable, promissory notes, payment intangibles, chattel paper, instruments and other rights of Midtown to the payment of money in connection with the operation and management of the Receivership Property (collectively, the "Accounts");

c. all deposit accounts of Midtown, including, without limitation, all checking accounts, savings accounts, payroll accounts, payroll tax accounts, petty cash accounts, and escrow accounts (collectively, the "Deposit Accounts");

d. all business records of Midtown, in whatever form or media maintained, including, but not limited to, all documents evidencing ownership of any Receivership Property (including bills of sale and certificates of title), books of accounts, financial statements, balance sheets, ledgers, expense statements, logs, maintenance and servicing records, journals, reports, and other documents (collectively, the "Records");

e. all of Midtown's investment property, including, without limitation, stocks, mutual funds, certificates of deposit, bonds, and other securities;

f. all insurance policies relating to the operation of the Receivership Property;

g. all of Midtown's permits, licenses, registrations and certificates (including, without limitation, certificates of registration and re-registration relating to any aircraft) that were issued by governmental authorities or are necessary for the ownership or use of any of the Receivership Property or the operation of Midtown's, and the Receiver shall be entitled to operate and to all of the other benefits and privileges arising under all of such permits, licenses, registrations and certificates;

h. all of Midtown's general intangibles, customer lists, and rights under contracts relating to the operation and management of the Receivership Property;

i. all causes of action, claims, rights in respect of pending or potential litigation and arbitration proceedings, and judgments owned by or in favor of any Defendant relating to the operation and management of the Receivership Property;

j. all patents, trademarks, copyrights and other intellectual property of any Defendant; and

k. all tax refund claims of Midtown, whether now in existence or hereafter arising.

(collectively, the "Receivership Property").

2

2.     Need and Ground for Appointment of Receiver.  The appointment of a receiver is necessary to preserve and manage the Receivership Property.  Absent entry of this Order, the Receivership Property remains at risk of damage or loss, and neither Defendants nor Plaintiff will be able to maximize the value of the Receivership Property in a controlled, orderly fashion. Plaintiff's interests in the Receivership Property will be irreparably harmed if a receiver is not appointed to take control of and to manage the Receivership Property and collect the rents and profits therefrom. In the absence of the appointment of a receiver, the Receivership Property is in danger of immediate and irreparable damage or loss.

3.     Possession and Control of Receivership Property.  The Receiver is authorized to immediately take exclusive and sole possession and control of the Receivership Property, and to keep and preserve (and make all reasonable and customary arrangements for the operation and preservation of same), and to otherwise exercise the powers and duties set forth in this Order. The Receiver is authorized, if he deems necessary, to remove any person, occupant or Defendant from occupancy and/or possession of the Receivership Property.

4.     Actions in Furtherance of Possession and Control.  The Receiver is authorized to take any actions which he shall deem necessary or appropriate to take exclusive and sole possession of, exercise full control over, to prevent waste and to otherwise preserve, manage, maintain, secure, safeguard, sell, transfer or liquidate the Receivership Property. This Court commands the Sheriff of Oakland County, or any other court officer that the Receiver may choose to employ, to immediately deliver, without delay, to the Receiver possession of the Receivership Property and, if necessary, use force as required if the premises are not voluntarily opened to use a locksmith for said purpose.  As soon as practicable after service of this Order, Defendants and any other person or entity served with a copy of this Order, shall deliver to the Receiver all keys, entry codes, and combination locks necessary to gain access or to secure access to the Receivership Property.

5.     Turnover of Receivership Property.  Defendants and all of their employees, principals, owners, representatives, and agents, and any other person or entity who receives a copy of this Order, are directed to immediately turn over to the Receiver all of the following:

a.     All cash on hand, bank accounts and all personal property, tangible or intangible;

b.     All keys, computer passwords, combinations to locks and access codes necessary for the Receiver to obtain exclusive possession and control of the Receivership Property as provided in this Order;

c.     All agreements and documents relating to the Receivership Property;

d.     All revenues, profits, rents and/or income collected from the operation of the Receivership Property;

e.     All documents, books, records, computer files and related software concerning the finances, operation and management of the Receivership Property;

f.     A list of all liens, claims, interests, mortgages and all other encumbrances relating

3

19-42309-tjt    Doc 364    Filed 10/24/19    Entered 10/24/19 09:31:41    Page 29 of 51

FILED    Received for Filing    Oakland County Clerk    8/27/2018 12:28 PM

to the Receivership Property;

g. All documents identifying pending or threatened litigation relating to the Receivership Property; and

h. Such other records or documents pertaining to the operating and management of the Receivership Property, as may be reasonably requested by the Receiver.

6. **Cooperation of Defendants.** Defendants shall cooperate with the Receiver in the listing of the Receivership Property for sale, the marketing and showing of the Receivership Property, and the closing and sale of the Receivership Property. Further, Defendants shall make available to the Receiver for inspection and copying all of their records concerning the Receivership Property as shall be reasonably necessary for the Receiver to fulfill his duties under the terms of this Order. Defendants, those in active participation or concert with them who receive notice of this Order, and those having claims against the Receivership Property who receive notice of this Order, are restrained and enjoined from directly or indirectly interfering with the Receiver's actions in furtherance of performing the duties and carrying out the responsibilities outlined in this Order.

7. **Powers and Duties of Receiver.** This Order vests the Receiver with the fullest authority, powers and duties of a receiver permitted under applicable statutory and case law including, but not limited to, MCR 2.622 and MCL 600.5201 *et seq.* The Receiver's authority, powers and duties include, but are not limited to, the following:

a. The maintenance, securing, and preservation of the Receivership Property;

b. The control over the Receivership Property, including all revenues, profits, rent and/or income derived therefrom, if any;

c. To collect all revenues, profits, rents and/or income related to the Receivership Property;

d. To take all actions necessary to operate the Receivership Property in its ordinary course;

e. To pay for services rendered by vendors, suppliers, and the like for services rendered at the request of the Receiver or otherwise in the ordinary course of maintaining, securing, managing, operating and preserving the Receivership Property;

f. To pay any other expenses that the Receiver determines to be necessary in the ordinary course, as determined by the Receiver and Plaintiff in their sole and absolute discretion;

g. To reasonably employ professionals, including but not limited to, accountants, real estate brokers, and attorneys, to render services as needed to perform his duties under this Order;

4

FILED   Received for Filing   Oakland County Clerk   8/27/2018 12:28 PM

FILED    Received for Filing    Oakland County Clerk    8/27/2018 12:28 PM

h.     To sign, on behalf of Midtown, any check, draft, item, negotiable instrument or instrument of title necessary to effectuate the duties under this Order;

i.     The maintenance of a separate bank account in the Receiver's own name, from which the Receiver shall collect and disburse all authorized payments under this Order;

j.     The purchase of such insurance as the Receiver deems appropriate for the preservation and protection of the Receivership Property. The Receiver and Plaintiff shall be named as additional insured and mortgagee or as their interests otherwise appear;

k.     The payment of all real estate and personal property taxes and any other assessments against the Receivership Property, during the period of the receivership;

l.     To sell the Receivership Property, at a price and on terms acceptable to Receiver and Plaintiff and upon order of the Court. In connection therewith, the Receiver shall advertise the sale and contract with and pay brokers and agents as reasonably determined necessary by the Receiver;

m.     To expend such other amounts as: (i) Plaintiff and Receiver agree to in writing; or (ii) this Court shall approve after notice to all parties with an opportunity for hearing;

n.     To remove any officer, independent contractor, employee, representative or agent of any Defendant, from control and management of the affairs of Midtown;

o.     To prevent the withdrawal, misappropriation or misapplication of funds;

p.     To sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, documents, books, records, work papers, and records of amounts, including computer-maintained information, and other papers of Midtown, including documents related to customers, clients or limited partners of Midtown whose interests are now held by or under the direction, possession, custody or control of Midtown;

q.     To initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any action or proceeding in state, federal or foreign court necessary to preserve or increase the assets of Midtown or to carry out his duties pursuant to this Order;

r.     To take all reasonable action that he deems necessary or appropriate to take possession of, exercise full control over, to prevent waste and to otherwise preserve, manage, maintain, secure and safeguard the Receivership Property;

s.     To seek assistance of law enforcement officials as necessary to preserve the peace

<div align="center">5</div>

and protect the Receivership Property;

t.    To issue subpoenas as the Receiver deems necessary to determine any and all parties asserting any rights to the Receivership Property, without the necessity of compliance with any rule or provision of law that would impose any limitations on the Receiver's ability to issue such subpoenas;

u.    To receive, open, read, and respond to all mail addressed to Midtown; provided that if the Receiver receives and reviews communications to Midtown that are marked confidential, attorney-client privileged or similarly restricted, he shall maintain the confidentiality of such communications and neither his receipt nor his review of any such communications shall be deemed a waiver of any attorney-client privilege or similar protection that otherwise applies;

v.    Following at least five (5) business days' prior notice to Midtown, to abandon any portion of the Receivership Property that, in the exercise of the Receiver's business judgment, is burdensome to the Receivership Estate;

w.    To investigate any previous transfers or financial transactions related to the Receivership Property to determine whether any such transaction was fraudulent. The Receiver is also authorized to pursue recovery of any such transfer in accordance with Michigan or federal law; and

x.    To take any action whatsoever in furtherance of the spirit of this Order.

The Receiver is authorized to take any and all actions not specifically enumerated herein which are necessary and proper to properly and adequately sell, lease, license, encumber, collect, compromise, or otherwise dispose of or use the proceeds of all or any part of the Receivership Property. Notwithstanding anything to the contrary in this Order, the Receiver shall not be authorized to sell, lease, license, encumber, collect, compromise or otherwise dispose of, or use the proceeds of, any part of the Receivership Property without (i) the prior express consent of Plaintiff, which consent may be given or withheld in Plaintiff's sole and absolute discretion and may, if so elected by Plaintiff, be conditioned upon Plaintiff's agreement as to the timing, method, manner and terms of any sale, lease, encumbrance, compromise or other disposition of any Receivership Property, or (ii) an Order from this Court after notice to all creditors with an opportunity to be heard pursuant to applicable law; and the Receiver shall in all events promptly account for and turn over to Plaintiff, for application to Defendants' obligations to Plaintiff, all cash and non-cash proceeds received in connection with any sale, lease, collection or other disposition of any Receivership Property.

8.    <u>Borrowing of Funds By Receiver</u>.  Subject to the approval of the Court and Plaintiff, the Receiver is authorized, but not required, to borrow funds upon terms and conditions agreeable to Plaintiff and the Receiver for the purpose of preserving, maintaining, securing and safeguarding the Receivership Property, to the extent necessary. Upon receipt of approval of the Court, the Receiver shall be authorized to execute all promissory notes, loan agreements and other documents necessary to accomplish same.

6

FILED   Received for Filing   Oakland County Clerk   8/27/2018 12:28 PM

FILED    Received for Filing    Oakland County Clerk    8/27/2018 12:28 PM

9.    Sale of Receivership Property. The Receiver is authorized to, on behalf and in the name of any Defendant, as applicable, expeditiously and diligently sell the Receivership Property outside Midtown's ordinary course of business, with the approval of the Court.

10.    No Waiver of Claims and Defenses. Nothing contained in this Order shall enlarge or restrict the claims and defenses of Plaintiff or other parties claiming an interest in or to the Receivership Property.

11.    Restraint on Destruction or Transfer. Defendants, their agents, servants, employees, representatives, attorneys and anyone acting on behalf of, in concert with or in participation with them are enjoined from directly or indirectly (i) granting, pledging, transferring, encumbering, conveying, leasing, assigning, concealing, dissipating, converting destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, the Receivership Property or any asset or personal property of any Defendant; and (ii) destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, any document or record that relates to the Receivership Property or any Defendant.

12.    Further Instructions. The Receiver shall have the right to apply to the Court for further instructions and authorization during the pendency of this action.

13.    No Transfer of Title. Nothing contained in this Order shall be construed to transfer title to the Receivership Property to the Receiver.

14.    Compensation of Receiver and Professionals. The Receiver and all professionals employed by the Receiver shall be paid from the Receivership Property. The Receiver shall receive reasonable compensation for his services.    Pursuant to MCR 2.622(C)(3) and (F), the Receiver's compensation shall be based on reasonable hourly rates charged by the Receiver's firm's members/partners, associates, employees and paralegals. The Receiver shall also be entitled to reimbursement for reasonable out-of-pocket expense related to the performance of his duties as Receiver. All compensation of the Receiver is subject to final review and approval of this Court. The Receiver shall issue a notice to all parties including a description in reasonable detail of the services rendered, time expended and expenses incurred; the amount of compensation and expenses requested; the amount of any compensation and expenses previously paid to the Receiver; the amount of any compensation and expenses received by the Receiver from or to be paid by any source other than the Receivership Property; and a description in reasonable detail of any agreement or understanding for a division or sharing of compensation between the person rendering the services and any other person.    If written objections are filed or if, in the Court's determination, the application for compensation requires a hearing, the Court shall schedule a hearing and notify all parties of the scheduled hearing. Any payment made by Plaintiff to the Receiver and his professionals shall be added to the indebtedness owed by Defendants to Plaintiff, shall be deemed to be a "protective advance," and shall be secured by the existing liens thereunder. The Receiver's approved compensation shall be an administrative claim against the Receivership Property.

15.    Lawsuits Against Receiver. No person or entity shall file suit against the Receiver, or take other action against the Receiver, or any action against the Receivership Property without an order of the Court permitting the suit or action.

7

16. <u>Breaches by Receiver</u>. The Receiver and his employees, agents, accountants and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties and those of his employees, agents and attorneys relating thereto under this Order, except for those arising from gross or willful misconduct, intentional tortious acts, breaches of fiduciary duty, gross negligence, acts committed in bad faith, malicious acts, and/or failure to comply with this Court's orders.

17. <u>Acceptance of Appointment as Receiver</u>. The Receiver's duty to act in this capacity is subject to the written acceptance and approval of the terms of this Order. Upon acceptance, the Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

18. <u>Duration of Receivership</u>. This receivership shall continue until the earlier of: (i) the sale of the Receivership Property and the final distribution of funds hereunder; or (ii) further order of the Court.

19. <u>Resignation of Receiver</u>. In the discretion of the Receiver, the Receiver may notify the Court and the parties that the receivership is no longer practical. Upon such event, the Receiver's duties shall terminate thirty (30) days after filing the notice with the Court, followed by an order of the Court accepting the Receiver's resignation. If any interested party believes a receivership is still necessary under the circumstances, upon motion and notice to all interested parties, the Court shall consider the advisability of continuing the receivership.

20. <u>Removal of Receiver</u>. The Receiver may be removed by order of the Court, upon a motion for cause. If the Receiver is removed, a successor receiver may be appointed by a stipulated order on behalf of the parties to this action. If the parties to this action are unable to agree on a successor receiver, the Court shall appoint a successor receiver, after a motion is filed by any party to this action requesting the appointment of same.

21. <u>Receiver's Reports/Final Accounting</u>. The Receiver shall

a. within 35 days of entry of this Order, file an inventory with the Court identifying the Receivership Property, pursuant to MCR 2.622(C)(2) and D(3);

b. account for all receipts, disbursements and distributions of money and property of the Receivership Property;

c. file with this Court and serve on the parties and those interested who may have appeared, a periodic accounting of all receipts and disbursements concerning the performance of the Receiver's duties under this Order and a final accounting upon discharge;

d. file quarterly reports as to the status of the receivership; and

e. within thirty (30) days after the termination of the receivership for any reason, the Receiver shall submit a final accounting for approval by the Court, with copies to be furnished to the parties to this action.

8

FILED   Received for Filing   Oakland County Clerk   8/27/2018 12:28 PM

22. <u>Court Approval of Final Accounting</u>. Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged and his bond, if any, canceled.

23. <u>Amendment of Order</u>. This Order may be amended for cause, either upon the stipulation of the Receiver and the parties, or after a motion and hearing. No amendment to this Order shall affect the rights of persons or entities who are able to demonstrate that they relied upon the pre-existing terms of this Order to their detriment.

24. <u>Tax Returns</u>. The Receiver and his professionals shall not be responsible or required to, and shall not, prepare or file tax returns or otherwise wind up the business affairs of Defendants.

25. <u>Injunction</u>. During the pendency of this receivership, absent express permission of this Court, all actions by any creditor, lessor, landlord, taxing authority and other person or entity seeking money damages, dispossession of Receivership Property or other relief from any defendant or the Receivership Property and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed. Further, except for Plaintiff, all persons and entities who have or receive notice of this Order, including (i) Defendants (and all of their officers, directors, employees, representatives and agents), (ii) all creditors of any Defendant, and (iii) all persons or entities acting at the direction or on behalf of any of the persons described in clauses (i) or (ii), including, without limitation, sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are hereby restrained and enjoined from (a) destroying, concealing, using, collecting, taking possession of, transferring, asserting dominion or control over, repossessing, seizing, attaching, garnishing, executing upon, seeking to impose a judicial lien upon any Receivership Property, (b) otherwise interfering with the possession, custody, control, use, or management by the Receiver of any Receivership Property or with the Receiver's exercise of powers or discharge of duties under this Order, (c) altering any Records, (d) cancelling, terminating or limiting any insurance coverage, permits, registrations, certificates, licenses or contracts of any Defendant, or (e) filing or prosecuting any actions or proceedings that involve the Receiver or that affect any Receivership Property, except to the extent authorized by the Receiver or to the extent that any party to such action or proceeding may be required to answer or reply to any pending complaint, motion or other pleading in order to avoid default.

26. <u>Bond</u>. The Receiver shall post a $100,000.00 bond, the cost of which is an expense of the receivership.

IT IS FURTHER ORDERED that, upon the Receiver's request, this Court commands the Sheriff of Oakland County, or any other court officer that the Receiver may choose to employ, to immediately deliver to the Receiver, possession and control of the Receivership Property and, if necessary, to use force as required and if the premises are not voluntarily opened to use a locksmith or other appropriate means for said purposes.

9

FILED    Received for Filing    Oakland County Clerk    8/27/2018 12:28 PM

IT IS FURTHER ORDERED that this Court finds no just reason for delay and, therefore,

enters this Order as a final order.

<div style="text-align: right;">

/s/ Wendy L. Potts

CIRCUIT COURT JUDGE

rg

</div>

APPROVED AS TO FORM AND
CONTENT FOR IMMEDIATE ENTRY

ZOUSMER LAW GROUP PLC

By:    Michael I. Zousmer, (P47190)
Attorneys for Plaintiff
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan 48302
(248) 351-0099

KASED LAW, PLLC

By: Ziyad Kased (P72237)
Attorney for Defendants
631 E. Big Beaver Rd., Ste. 101
Troy, Michigan 48083
(248) 680-7300

MIDTOWN INVESTMENT GROUP, INC.

By:
Its:

Jimmy Damou, individually

10

FILED    Received for Filing    Oakland County Clerk    8/27/2018 12:28 PM

Exhibit F

FILED 3/25/2019 8:00 AM Received for Filing Oakland County Clerk

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

CITIZENS BANK, N.A.

       Plaintiff,

v.

MINDMINGLE, LLC, a Michigan
limited liability company, MIDTOWN
INVESTMENT GROUP, INC., a Michigan
corporation; and JIMMY DANOU, an
Individual, jointly and severally,

       Defendants.

Case No. 16-156009-CB
Honorable Martha D. Anderson

| **ZOUSMER LAW GROUP, PLC** | **STEVENSON & BULLOCK PC** |
|---|---|
| Michael Zousmer (P47190) | Charles D. Bullock (P55550), Receiver |
| Attorneys for Plaintiff | Elliot G. Crowder (P76137) |
| 4190 Telegraph Rd., Ste. 300 | Counsel for Receiver |
| Bloomfield Hills, MI 48302 | 26100 American Drive Ste. 500 |
| (248) 351-0099 | Southfield MI 48034 |
| | (248) 354-7906 |

## STIPULATED ORDER APPROVING RECEIVER'S COMPENSATION FROM SEPTEMBER 5, 2018 THROUGH FEBRUARY 28, 2019

NOW COMES, Charles D. Bullock (the "<u>Receiver</u>"), by and through his counsel, Stevenson & Bullock, P.L.C., and Citizens Bank, N.A., (the "<u>Plaintiff</u>"), by and through its counsel, Zousmer Law Group, PLC, who have agreed to the entry of this *Order Approving Receiver's Compensation from September 5, 2018 through February 28, 2019*; and the Court being further and more fully advised in the premises.

    **IT IS HEREBY ORDERED** that the Receiver's request for approval of fees in the amount of $29,185.00 for services rendered and $939.41 for reimbursement of expenses, for a total of $30,124.41 (the "<u>Awarded Compensation</u>"), is approved.

    **IT IS FURTHER ORDERED** that the Awarded Compensations an administrative claim

against the Receivership Property.

IT IS FURTHER ORDERED that the Receiver is authorized to use any funds on hand to satisfy, in whole or in part, the Awarded Compensation.

IT IS FURTHER ORDERED that Awarded Compensation is added to the indebtedness owed by Defendants to Plaintiff, is deemed a "protective advance", and is secured by the existing liens.

DATED: ___3/25/2019___          /s/MARTHA D ANDERSON
                                _____
                                CIRCUIT COURT JUDGE      KH


Approved for immediate entry:

**ZOUSMER LAW GROUP, PLC**                    **STEVENSON & BULLOCK, P.L.C.**

By: /s/ Michael Zousmer                       By: /s/ Elliot G. Crowder
Michael Zousmer (P47190)                      Elliot G. Crowder (P76137)
Counsel for Plaintiff                         Counsel for Receiver
4190 Telegraph Rd., Ste. 300                  26100 American Drive, Suite 500
Bloomfield Hills, MI 48302                    Southfield, MI 48034
Phone: (248) 351-0099                         Phone: (248) 354-7906
Facsimile: (248) 209-6457                      Facsimile: (248) 354-7907
Email: michael@zlawplc.com                    Email: ecrowder@sbplclaw.com

# Exhibit G

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Eastlake Investments LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Michigan |
| Case number | 19-42309-tjt |

## Official Form 410

# Proof of Claim

**04/19**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Citizens Bank, N.A.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Michael I. Zousmer, Esq.
Name

4190 Telegraph Rd., Ste. 3000
Number      Street

Bloomfield Hills      MI      48302
City      State      ZIP Code

Contact phone 248-351-0099

Contact email Michael@zlawplc.com

**Where should payments to the creditor be sent? (if different)**

Citizens Bank, N.A.
Name

One Citizens Bank Way
Number      Street

Johnston      RI      02919
City      State      ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410

Proof of Claim

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $ 250,000.00. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Claim Against Equity Interest Per Court Order

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: Charging Lien

**Basis for perfection:** ____________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $____________

**Amount of the claim that is secured:** $ 250,000.00

**Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $____________

**Annual Interest Rate** (when case was filed)_______%

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*                                          Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under
11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                           $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for
personal, family, or household use. 11 U.S.C. § 507(a)(7).        $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the
bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).                                           $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).       $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.       $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    05/21/2019
                   MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Michael I. Zousmer
            First name          Middle name              Last name

Title       Attorney for Creditor

Company     Zousmer Law Group PLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     4190 Telegraph Rd., Ste. 3000
            Number        Street

            Bloomfield Hills                     MI        48302
            City                                 State     ZIP Code

Contact phone   248-351-0099              Email  michael@zlawplc.com

FILED    Received for Filing    Oakland County Clerk    3/15/2019 3:58 PM

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

CITIZENS BANK, N.A.

    Plaintiff,

v.

MINDMINGLE, LLC, a Michigan limited
Liability company: MIDTOWN INVESTMENT
GROUP, INC., a Michigan corporation; and
JIMMY DANOU, an individual,
jointly and severally,

    Defendants.

Case No. 16-156009-CB
Hon: Martha D. Anderson

---

ZOUSMER LAW GROUP PLC
By:    Michael I. Zousmer (P47190)
Attorneys for Plaintiff
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan  48302
(248) 351-0099

    /

---

## CHARGING ORDER AGAINST THE INTERESTS AND DISTRIBUTIONS OF EASTLAKE INVESTMENTS LLC, A MICHIGAN LIMITED LIABILITY COMPANY

At a session of said Court
held in the City of Pontiac,
County of Oakland, State of Michigan
on _ 3/15/2019_____
PRESENT: _MARTHA D ANDERSON_
Circuit Court Judge

Pursuant to representations made by Plaintiff in its Petition and relying on the cited

statutory authority, it is ordered that, pursuant to Plaintiff's request, a Charging Order is hereby

entered against all interests held by and distributions made to Defendant Jimmy Danou, in this

case individually and as a member of EASTLAKE INVESTMENTS LLC, a Michigan limited liability company, for the amount due to Plaintiff on the Consent Judgment entered against Defendant in this case and that the interests are charged pursuant to MCL 450.4507 until further order of this Court or until a notice of satisfaction of judgment is filed by Plaintiff.

Dated: _3/15/2019_____

/s/ Martha Anderson
_____
Circuit Court Judge

       KH

SUBMITTED AND APPROVED
AS TO FORM

ZOUSMER LAW GROUP PLC

/s/ Michael I. Zousmer
_____
By:   Michael I. Zousmer (P47190)
Attorneys for Plaintiff
4190 Telegraph Rd., Ste. 3000
Bloomfield Hills, Michigan 48302
(248) 351-0099

2

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

In re:

EASTLAKE INVESTMENTS LLC

      Debtor.

_____/

Chapter 11
Case No. 19-42309
Judge Thomas J. Tucker

## ORDER REGARDING DISTRIBUTION OF SALE PROCEEDS

This case is before the Court on the Debtor's Motion to Sell Real Estate Free

and Clear of Liens (Docket # 21) and Citizens Bank's Limited Objection to Motion

to Sell Real Estate Free and Clear of Liens and Brief in Support (Docket # 43), and

the stipulation filed on April 3, 2019 (Docket # 58, the "Stipulation").  Based on

the Stipulation,

IT IS ORDERED that:

    1.    At least 24 hours prior to the closing of the proposed sale, Debtor's
counsel must provide Citizens Bank, NA (via its counsel) (i) a copy of the
settlement statement, and (ii) the time and place of the closing on the proposed
sale.

    2.    Citizens Bank, NA must be provided (both prior to closing and after
the closing) with all reasonably requested information regarding the proposed sale
and the proposed sale proceeds.

    3.    The sale proceeds, net of all customary closing costs, payment of
unpaid real estate taxes assessed against the Property and payment of an amount
necessary to discharge all recorded liens and encumbrances (including First State
Bank's mortgages), must be remitted to and held in Debtor's counsel's trust
account.

    4.    If this case is dismissed, Debtor's counsel must, within 7 days after
dismissal, remit to Citizens Bank, N.A., via wire transfer to its counsel, an amount

equal to $250,000.00 less any amounts received by Citizens Bank, N.A. pursuant to the court appointed receiver's sale of real property located at 29434 32 Mile Road, Lenox Township, Michigan.

5.    None of the net sale proceeds may be disbursed, distributed, transferred or paid from Debtor's counsel's trust account to anyone (including Debtor's members) or any entity until further order of this Court.

6.    Debtor's counsel may not disburse, distribute, transfer or pay, directly or indirectly, any of the net sale proceeds to any entity or person (including any member of Debtor, including Jimmy Danou, or to a relative of or entity controlled by any member of Debtor, including Jimmy Danou), until Citizens Bank, N.A. is paid in full.

Signed on April 03, 2019



/s/ Thomas J. Tucker
_____

**Thomas J. Tucker**
**United States Bankruptcy Judge**

Exhibit H

CITIZENS BANK, N.A.

   Plaintiff,

v.

MINDMINGLE, LLC, a Michigan
limited liability company, MIDTOWN
INVESTMENT GROUP, INC., a Michigan
corporation; and JIMMY DANOU, an
Individual, jointly and severally,

   Defendants.

Case No. 16-156009-CB
Honorable Martha D. Anderson

| | |
|---|---|
| **ZOUSMER LAW GROUP, PLC**<br>Michael Zousmer (P47190)<br>Attorneys for Plaintiff<br>4190 Telegraph Rd., Ste. 300<br>Bloomfield Hills, MI 48302<br>(248) 351-0099 | **STEVENSON & BULLOCK PC**<br>Charles D. Bullock (P55550), Receiver<br>Elliot G. Crowder (P76137)<br>Counsel for Receiver<br>26100 American Drive Ste. 500<br>Southfield MI 48034<br>(248) 354-7906 |

**STIPULATED ORDER TERMINATING RECEIVERSHIP, DISCHARGING
RECEIVER, AND APPROVING ACTIONS OF RECEIVER**

  NOW COMES, Charles D. Bullock (the "Receiver"), by and through his counsel,

Stevenson & Bullock, P.L.C., and Citizens Bank, N.A., (the "Plaintiff"), by and through its

counsel, Zousmer Law Group, PLC, who have agreed to the entry of this *Order Terminating*

*Receivership, Discharging Receiver, and Approving Actions of Receiver*; and the Court being

further and more fully advised in the premises and finding good cause for the entry of this Order.

  NOW THEREFORE, IT IS HEREBY ORDERED as follows:

  1.  The receivership of the Receivership Property, as such term is defined in the

*Stipulated Order Appointing Receiver and Related Injunctive Relief* dated August 22, 2018 and

any amendments, supplements and revisions thereto (collectively, the "Receivership Order") is

FILED Received for Filing Oakland County Clerk 6/7/2019 11:25 AM

terminated, the Receiver is discharged, any bond terminated, and the Receivership Estate is closed.

2.      All actions taken or not taken by the Receiver and his professionals, including, without limitation, his attorneys and accounting professionals, throughout the duration of the Receivership are approved, and such actions taken and not taken have been properly executed and have met the requirements of this Court's orders regarding such issues, including but not limited to this Court's Receivership Order and the laws of the State of Michigan in general, as ascertained by and reviewed by this Court through the date of this Order.

3.      The Receiver and his professionals, including, without limitation, his attorneys and accounting professionals, are fully, finally and unconditionally discharged and released from any duties, obligations and liabilities with respect to the Receivership Estate.

4.      All claims and causes of action against Receiver and his professionals, including, without limitation, his attorneys and accounting professionals, for any and all actions taken and not taken throughout the duration of the Receivership Estate shall be completely and forever barred, and from and after entry of this Order terminating the receivership, Receiver shall have no further responsibilities or obligations under the Receivership Order and the laws of the State of Michigan in general with respect to any matter relating to or arising from this receivership and the Receivership Estate.

5.      Notwithstanding anything herein, the Bank reserves its rights to enforce all rights and remedies available pursuant to the *Consent Judgment* dated November 16, 2016, including, without limitation, the appointment of another receiver at a later date.


DATED: 6/7/2019                          /s/ Martha Anderson
                                                        CIRCUIT COURT JUDGE    KH

Approved for immediate entry as to form and content:

**ZOUSMER LAW GROUP, PLC**

By: /s/ Michael Zousmer
Michael Zousmer (P47190)
Counsel for Plaintiff
4190 Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
Phone: (248) 351-0099
Facsimile: (248) 209-6457
Email: michael@zlawplc.com

**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder
Elliot G. Crowder (P76137)
Counsel for Receiver
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ecrowder@sbplclaw.com